UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF CERTAIN ADMINISTRATIVE SUBPOENAS | MBD No. 21-91444-LTS<br><br>**FILED UNDER SEAL** |

**MEMORANDUM IN SUPPORT OF
THIRD APPLICATION FOR
(1) AN *EX PARTE* ORDER PURSUANT TO SECTION 21(h)(4)
OF THE SECURITIES EXCHANGE ACT OF 1934,
(2) *IN CAMERA* CONSIDERATION, AND
(3) ORDER TO SEAL RECORDS OF THIS PROCEEDING**

On July 6, 2021, this Court issued an order authorizing the Securities and Exchange Commission (the "Commission") to delay the notice to three customers of subpoenas the Commission intended to serve on certain financial institutions. The original period of delayed notice for several of the original subpoenas served by the Commission was set to expire on October 5, 2021.[1] The Commission submitted a Second Application for an order delaying notice for an additional 90 days of any subpoenas issued to provide financial records for the same customers, which was granted on October 4, 2021. The Order extended the period of delayed notice to January 3, 2022.

The Commission also requests, pursuant to Section 21(h)(5) of the Exchange Act, 15 U.S.C. § 78u(h)(5), that all proceedings concerning the Third Application be held *in camera*, and that all records thereof remain under seal until 30 days after the conclusion of the Commission's investigation described below.

---

[1] The Commission issued several subpoenas on July 7, 2021. The Commission issued a subsequent subpoena on July 23, 2021.

In further support of the relief requested herein, the Commission incorporates by reference the Declaration of Trevor Donelan ("Donelan Dec."), which was filed in connection with the Commission's first Application.

## Introduction

As set forth in the first Application, the subpoenas were issued in furtherance of a non-public, formal investigation conducted by the Commission involving individuals who appear to have engaged market manipulation and insider trading in the stock of Quebec-based Loop Industries, Inc. (NASDAQ: LOOP). Specifically, between approximately mid-2017 and late 2018, three California residents—referred to herein as Person A (a Loop shareholder), Person B (a control person of an entity that holds Loop shares), and Person C (a Loop shareholder)—appear to have coordinated to manipulate the market for Loop stock, which appears to have enabled the group to unload Loop stock to United States-based investors at artificially high prices. And, Person C—in coordination with Persons A and B—appears to have convinced an elderly investor to purchase more than $5 million of Loop stock at or about the same time that the group appears to have been manipulating Loop's stock (thereby making it appear to be an attractive investment) in the public securities markets.

In addition to the foregoing, the Commission has reviewed evidence indicating that Person C shared material, nonpublic information about Loop—which Person C received from a Loop insider—to encourage investors to buy stock in exchange for a kickback.

In furtherance of the investigation, the Commission served subpoenas on three financial institutions—JPMorgan Chase, HSBC, and Wells Fargo—for financial records of Persons A, B, and C to investigate, among other things, (a) whether there are illegally obtained stock sale proceeds or other assets that can be preserved and returned to victims, (b) the full extent of the group's apparent coordinated manipulative trading and the sharing of any proceeds therefrom,

2

(c) the full extent of any kickbacks Person C received in exchange for divulging material, nonpublic information, and (d) whether Person C shared any of those kickbacks with Person A and/or Person B (or others). The Commission staff's (the "staff") analysis of the bank records appears to show additional connections between at least Person B and C. In particular, Person C may be the recipient of private stock sale proceeds made by a company associated with Person B.

The Right to Financial Privacy Act of 1978 ("RFPA"), which would otherwise require the Commission to provide notice to a customer of a subpoena to a financial institution for the customer's financial records, authorized this Court to issue its original orders delaying notice and sealing the records of these proceedings. The RFPA also provides authorization to grant the Commission's request for an extension. As set forth below, the staff continues working diligently on the investigation. Extending the period of delay is necessary to maintain the integrity of the investigation.

## Background of the Ongoing Investigation

Loop represents through various public statements that it is a recycling company. Donelan Dec., ¶11. Loop's common stock has been traded on the Nasdaq Global stock exchange since November 2017. *Id.* Previously, from November 2015 through mid-November 2017, Loop's common stock was traded in the over-the-counter securities markets, operated by an entity called OTC Markets Group Inc. *Id.*

Between April 2017 and November 2017, trading activity derived from brokerage accounts held by, or for the benefit of, Persons A, B, or C—and other individuals and entities who appear to be associated with Persons A – C—comprised more than 33% of the total market volume of trading in Loop stock. *Id.*, ¶12. Person A was a member of Loop's board of directors during this period of time, but never disclosed the full extent of his sales of Loop stock as legally

3

required pursuant to Section 16(a) of the Exchange Act. *Id.*, ¶¶16-17. At the time that Persons A – C and others with whom they appear to have been coordinating dominated the market for Loop stock, the company's stock price rose from around $6.00 per share to over $18.00 per share. *Id.*, ¶12. And, around this same time, Person C solicited at least one person to invest in Loop. *See id.*, ¶18.

For example, Person C appears to have contacted and successfully solicited investments totaling more than $5 million in the securities of Loop from an elderly individual ("Investor A") by encouraging him to purchase stock in the public securities markets and through private purchases from Loop or from entities affiliated with Persons A – C. *Id.* Around the same time, Persons A or B sold Loop stock. *Id.*

Meanwhile, Person A—who was a member of Loop's board of directors through mid-2018—took steps to conceal his trading in Loop stock from investors and securities intermediaries. *See id.*, ¶¶14-17. Specifically, Person A appears to have arranged to trade Loop securities through a front company called Ventanas Capital LLC. *Id.*, ¶16. On May 11, 2017, Person A requested power of attorney and trading authority over a brokerage account held in Ventanas Capital's name and, in doing so, falsely represented to the brokerage firm that he was not a "director, 10% shareholder or policy-making officer of a publicly held company." *Id.* In fact, at that time, Person A was a director of Loop. *Id.* Person A eventually caused Ventanas Capital to sell approximately $90,000 of Loop stock. *Id.*

### The Subpoenas and Investigation Status

The staff issued subpoenas to JPMorgan Chase, HSBC, and Wells Fargo for the financial records of Person A, Person B, and Person C. Further, over the last several months the staff has reviewed bank records obtained in response to the subpoenas, as well as telephone and trading records related to possible insider trading. The staff has also gathered additional information on

Loop and the nature of Person C's relationship with Loop. The staff continues to assess the merits of recommending that the Commission charge one or more of the customers referenced herein with securities laws violations, but the staff requires additional time to complete its review of the evidence in order to make an informed decision and recommendation. In addition, the staff is informed that the FBI's covert investigation into the conduct described herein is ongoing.

## Argument

1. General Statutory Framework

As summarized in more detail in the Commission's first Application the RFPA allows the Commission to obtain a customer's financial records through an investigative subpoena, but requires notice to the customer. Section 21(h)(2) of the Exchange Act provides the Commission with an exception to its typical notice requirements. This exception requires a court to enter an *ex parte* order delaying the Commission's notice obligation and prohibiting the financial institution from disclosing to the customer that the customer's records have been sought or obtained if the Commission demonstrates a reasonable belief of any one of several circumstances. The Commission made the required showing in its first Application, and this Court issued the requested orders.

The Exchange Act further authorizes the Court to grant extensions of the order delaying notice, and the Act does not limit the number of extensions the Commission may seek. 15 U.S.C. § 78u(h)(4)(B). In other words, the Court can grant an extension if the Commission demonstrates that it still has a reasonable belief that the requirements of Section 21(h)(2) are met. The Commission seeks such an extension here.

2. Extending the Period of Delayed Notice Is Justified Here

The Commission has reason to believe that notice to any of Person A, B, or C will result in several of the scenarios enumerated in Section 21(h)(2) of the Exchange Act, any one of

which is sufficient to grant an extension of the order delaying notice of the Subpoenas, including those highlighted in the Commission's first Application. And, as described above, the Commission's nonpublic investigation is ongoing, as is a parallel FBI covert investigation.

As stated in the Commission's first Application, Person A appears to have tried to conceal his trading in Loop stock by operating through a limited liability company and falsely representing that he was not a director of a public company. *See* Donelan Dec., ¶¶14-17. Similarly, Persons A – C all appear to have benefited, at least indirectly, by encouraging others (like Investor A) to invest in Loop stock while, at or about the same time, selling or coordinating with others who were selling Loop stock. *See, e.g., id.*, ¶¶12, 18-20. Further, Person C appears to have divulged inside information in exchange for a kickback—information he may have received from Persons A or B. *Id.*, ¶¶21-23. It is logical to infer, and to be concerned, that Person C would take steps to conceal his misconduct when he has shown the willingness to intentionally flout the federal securities laws.

The foregoing examples demonstrate the surreptitious nature in which Persons A, B, and C have operated with regard to Loop securities during the period of time subject to this application. If given notice of a subpoena, the Commission has reason to believe—and, indeed, is concerned in light of the paramount importance of identifying and preserving assets for potentially victimized investors, like Investor A—that Persons A – C may coordinate to further obfuscate the disposition of funds raised from Loop sales. In addition, if provided notice at this time, the staff has reason to believe the ongoing FBI covert investigation may be impeded.

## Conclusion

The statutory requirements to extend the order delaying notice are satisfied here. Accordingly, the Commission respectfully requests the Court to issue an *ex parte* order (1) extending the period of delayed notice of the subpoenas for an additional 90 days.

Respectfully submitted,

United States Securities and Exchange Commission

By:   /s/ Eric A. Forni
Eric A. Forni (BBO# 669685)
Alicia Reed (NY# 4913596)
William Donahue (BBO# 631229)
33 Arch St., 24th Floor
Boston, MA 02110
(617) 573-8827 (Forni)
fornie@sec.gov

Dated: December 22, 2021